### 9097

### FENNELL INFIRMARY v. SOUTHERN RAILWAY CO.

#### (85 S. E. 237.)

CARRIERS OF GOODS—INTERSTATE COMMERCE—DEMURRAGE—PENALTIES FOR FAILURE TO ADJUST FREIGHT CHARGES.

1. CARRIERS OF GOODS—DEMURRAGE.—Under Demurrage Rules—I. C. C. No. A—5114, applicable to interstate shipments over Southern Railway Co., allowing 48 hours free time for loading or unloading all commodities, the consignee is entitled to 48 hours within which to pay the freight charges, and unload the car, after it has been placed in proper position for unloading; and no demurrage can be charged until the expiration of that time.

2. PENALTIES—COMMON CARRIER—ADJUSTMENT OF FREIGHT CHARGES—INTERSTATE SHIPMENTS.—Civil Code, sec. 2571, providing a penalty

for failure of common carriers to adjust and settle freight charges according to rate stipulated in bill of lading, has no application to interstate shipments.

Before DeVore, J., Yorkville, April, 1914. Affirmed conditionally.

Action by Fennell Infirmary against Southern Railway Company. From judgment for plaintiff, defendant appeals. The facts are stated in the opinion.

*Messrs. Spencer, Spencer & White,* for appellant, submit: *The I. C. C. Tariff governs shipment:* 158 U. S. 98; 202 U. S. 242; 119 Ala. 539; 43 L. R. A. 385; 72 Am. St. Rep. 936; 204 U. S. 435; 63 Mo. App. 145; 14 S. Dak. 443; 223 U. S. 573; 102 N. E. 366; 38 L. R. A. (N. S.) 353; 5 Ga. App. 424; 63 S. E. 528; 12 I. C. Rep. 418; 139 S. W. 536; 14 I. C. Rep. 232; 128 N. Y. S. 643; 37 Okla. 24; 130 Pac. 291; 188 Fed. 879; 207 Fed. 733; 166 Mo. App. 372; 148 S. W. 977. *Consignee cannot demand delivery until he tenders charges:* Hutch. Carriers (3d ed.), sec. 864; Schonler Bailments, p. 544; 94 Ga. 507; 20 S. E. 119; 145 U. S. 263; 63 S. E. 252. *Civil Code, sec. 2571, does not apply to interstate shipments:* 222 U. S. 424.

*Messrs. Dunlap, Dunlap & Hollis,* for respondent, submit: *Findings of fact cannot be reviewed here:* 50 S. C. 214; *nor questions not argued below:* 30 S. C. 455; 42 S. C. 365; 49 S. C. 27; 23 S. C. 70. *Statute imposing penalty within the power of the State:* 215 U. S. 128; 63 S. C. 169; 79 S. C. 519; 75 S. C. 282.

May 5, 1915.
The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

FOOTNOTE.—As to demurrage charges for detention of cars by consignees, see note in 22 L. R. A. 530. As to lien of railroad for demurrage charges, see note in 4 A. & E. Ann. Cas. 15.

This is an action to recover the sum of six dollars, alleged to have been unlawfully collected by the defendant for demurrage, and a penalty of fifty dollars, for failure to pay said claim within the time prescribed by statute.

After alleging the corporate existence of the defendant, the allegations of the complaint are as follows:

"That on the —— day of ——, 1913, a carload of coal consigned to the plaintiff, was received by the defendant at Rock Hill, said county and State.

"That upon receipt of notice, by the plaintiff from the defendant, of the arrival of said car, the plaintiff paid the amount of the freight charges demanded by the defendant, and directed the defendant's agent at Rock Hill, S. C., to have the said car placed on the track siding at, or near, the Fennell Infirmary's building, in said city of Rock Hill, for the purpose of having said car unloaded.

"That said agent agreed to, and did place said car on said siding, as directed, but, contrary to the statutory rules and regulations in such matters prescribed, said defendant, through its agents and servants, shortly thereafter, removed said car from said siding, without allowing said plaintiff sufficient time within which to unload the same.

"That on the twentieth day of October, 1913, as a prerequisite to replacing said car on said siding for the purpose of unloading the same, defendant demanded of the plaintiff the sum of six ($6.00) dollars as demurrage on said car; that plaintiff, although protesting that said charge was exorbitant, unjust and unlawful, paid said demurrage and thereupon marked upon the demurrage receipt the following: "Paid Under Protest."

"That the refusal to deliver said car of coal, when the freight was paid therefor, and the requirement to pay the additional sum of six ($6.00) dollars, was contrary to, and in excess of, the rate stipulated in the bill of lading, to be charged for the hauling and delivery of said car of coal.

"That the collection by the defendant of the said sum of six ($6.00) dollars, was unjust and in violation of the rules of the railroad commissioners and of the statutes of the State of South Carolina.

"That demand for the return of the said sum of six ($6.00) dollars, has been made on the agent of the said defendant, and the same refused; and that the said defendant is justly indebted to the plaintiff in the sum of six ($6.00) dollars.

"That by reason of the failure of the defendant to deliver to the plaintiff the said car of coal, after the freight charges had been paid therefor, and the requirement to pay the additional sum of six ($6.00) dollars, an excessive rate over that specified in the bill of lading, the defendant has become liable for the payment to the plaintiff of a penalty in the sum of fifty dollars."

The defendant denied the allegations of the complaint, and set up a defense, the allegations of which are substantially as follows:

That on the 10th day of October, 1913, a carload of coal consigned to Fennell Infirmary, arrived at Rock Hill, S. C., from Appalachian, in the State of Virginia.

That immediately upon the arrival of the said car of coal, defendant sent to the plaintiff notice of the arrival of the said car, and of the amount of freight due thereon.

That the amount of freight due upon said shipment was not paid until the 20th day of October, 1913, and that immediately upon the payment of said freight charges, defendant placed the said car of coal for convenient unloading.

That said shipment of coal, being made from Appalachian, in the State of Virginia, to Rock Hill, in the State of South Carolina, was an interstate shipment, and as such was subject to all the rules and regulations governing such shipments, and fixing the charge due thereon, laid down

and promulgated by the Interstate Commerce Commission, which said commission has exclusive jurisdiction over such shipments.

That in this connection, the shipment mentioned above, was peculiarly subject to the rules and regulations laid down by the Interstate Commerce Commission, and filed with the said commission in accordance with the law, contained in demurrage and storage rules applicable on interstate traffic, at stations on the Southern Railway, and known as I. C. C. No. A-5114; and that, under the rules and regulations laid down therein and of force thereunder, there became due on the shipment mentioned above, on account of the delay in the payment of the freight charges thereon, the sum of six dollars demurrage, levied and assessed in accordance with said rules and regulations.

The first question that will be determined is, whether the plaintiff is entitled to recover the sum of six dollars, alleged to be due for demurrage.

W. W. Fennell testified as follows:

"I am the owner of the Fennell Infirmary. I direct its affairs. On October 10th, 1913, I received notice by mail that a carload of coal assigned to plaintiff was at Southern depot. Sam Camp told me the car was there. I told him to have it placed at the crossing. Camp is yard conductor. The car was placed at the crossing, near Capt. Marshall's. In previous shipments of coal the company had placed cars on the same track. I have received other coal from the company in carload lots. I received from the company, to the best of my knowledge, in each case notice of arrival. In each case I asked them to place the car at the usual place. After the car was placed I would pay the freight. The car was not placed where I could unload it until the 20th of October. It was placed in the late afternoon of October 10th, and the next morning it had been moved some distance above the crossing, where I could not unload it. On the

20th it was placed at the crossing, and Capt. Marshall was instructed to unload it.   On October 20th, I paid the freight and $6.00 demurrage.   I paid the demurrage under protest."

The notice mentioned in the defendant's answer, contained the statement that the freight consigned to the plaintiff had arrived, and was ready for delivery to him from shipper station; and that demurrage and storage would be assessed at the expiration of the free time, provided by the rules of the company.

Under the head of demurrage rules, it is provided by section (a) of rule No. 2, that "forty-eight hours (two days), free time will be allowed for loading or unloading on all commodities."

The findings of fact by the magistrate as stated in his return are as follows:

"From the testimony, I held as a matter of fact that the railway company had adopted as a rule, the delivery of cars to the plaintiff, on the siding at or near the Fennell Infirmary.

"I held as a matter of fact that the car was so delivered, but was allowed to remain at the delivery point a time too short for the plaintiff to begin unloading.   That by reason of the custom adopted by the plaintiff and the defendant company, the delay for which demurrage was charged was not the fault of the plaintiff, but was the fault of the defendant company; the defendant company having led the plaintiff to believe that the freight would not be due until the car was delivered on the siding."

His Honor, the presiding Judge, in affirming the judgment of the magistrate, said:

"After having heard the testimony read, I am of the opinion that the facts proven were sufficient to warrant the finding of the magistrate's verdict, and shows that the charge of six dollars demurrage by the defendant-appellant was unlawful, as at no time until October 20th, 1913, was car

placed by defendant for unloading, and demurrage could not be charged until after car was placed."

The findings of fact by the Circuit Judge are not reviewable by this Court.

There was no objection to any of the testimony that was introduced, either on the part of the plaintiff or defendant.

Under the rules of the company, demurrage could not be assessed against the consignee until the expiration of forty-eight hours after notice that the freight had arrived and was ready for delivery. The consignee was entitled to forty-eight hours, within which to pay the freight charges, and to unload the car, after it had been placed in proper position for unloading.

The findings of fact by the magistrate and Circuit Judge show that the freight charges were paid and the car unloaded within forty-eight hours after the car was placed and remained in proper position for unloading, during the time required by the rules of the company.

The exceptions raising this question are overruled.

The next assignment of error that will be considered is as follows:

"Because the presiding Judge erred in affirming the judgment below, and giving effect to section 2571, vol. I, of the Code of Laws of 1912, of the State of South Carolina, which said section and other statutory laws of the State are superseded and annulled by the act to regulate commerce and the acts amendatory thereof, in pursuance of the commerce clause of the Constitution of the United States, and that he should have held that the whole question should be determined by the Federal laws, and the rules and regulations filed with and approved by the Interstate Commerce Commission, by virtue of the authority given by the said act."

The authorities cited in the argument of the appellant's attorney show that this exception must be sustained.

It is the judgment of this Court that the judgment of the Circuit Court be reversed unless the plaintiff shall remit the penalty within twenty days after the remittitur is sent down.